Case 24-6028, Reuben Adams et al. v. LFUCG et al. Argument not to exceed 15 minutes per side when counsel is ready. Good morning, your honors. My name is Amy Robinson-Staples, and I am here on behalf of the plaintiffs Reuben Adams, J'Ton McClain, Andrew Phillips, Vito Tisdale, and Joe Williams. I've asked to reserve four minutes for rebuttal, please. Of course. In 2021, plaintiffs were thriving black student-athletes at the University of Kentucky. One evening, some of the plaintiffs attended a party to which they had been invited. Once there, members and guests of the white fraternity that were hosting the party ambushed them, berating them with racial slurs and physically assaulting them. Plaintiffs who were young students with good reputations both on and off the football field, and who had done nothing wrong, were then targeted by the defendant officers who fabricated evidence and initiated a malicious prosecution against them for serious felony offenses they did not commit. As a result, the false charges against the plaintiffs were broadcast on national media outlets. The plaintiffs faced up to 20 years imprisonment, and their educational, athletic, and professional careers were forever damaged. I'd like to first briefly address the plaintiff's fabrication argument, and then move on to the malicious prosecution claim. The defendants argue that plaintiff's Fourth Amendment fabrication of evidence claim fails because the plaintiffs have not sufficiently pled a deprivation of liberty. But the plaintiff's claim survives for multiple reasons. One, and most importantly, a fabrication of evidence claim does not require a deprivation of liberty. On that point, in 2023, this Court reiterated in Price v. Montgomery County what it's repeatedly held, that a Fourth Amendment fabrication claim requires only two showings, that the evidence was knowingly fabricated, and it is reasonably likely that the fabricated evidence affected the jury's decision. But you don't have to go to trial to meet this prong. Does it make any difference what amendment you have pled it under? I'm sorry, ma'am? Does it make any difference what amendment you've pled the fabrication? Well, there are cases that both deal, obviously, with the Fourth Amendment claim and the Fourteenth Amendment claim. Here, no, I don't believe on this issue it makes a difference that we pled this as a Fourth Amendment claim because Price said you did not have to proceed to trial. Price was a case in which the charges were dismissed against the plaintiff before he proceeded to trial, and the Court analyzed the claim there. And Price, was the plaintiff ever incarcerated? Yes, the plaintiff was incarcerated. So we didn't have to address this question in Price about whether you actually had to have some sort of seizure to make out the claim. You did not have to address that specifically, that is correct, but the Price case did talk about how there is a viable Fourth Amendment claim, and that case did not go to trial. The Court also addressed that claim in Jackson v. Cleveland, a 2019 case, and there the Court said that fabricated evidence used as the basis for criminal charges supports a fabrication claim because absent that evidence, there would have never been a jury. So in Price and in Jackson, one of the issues that was talked about was that using the fabricated evidence that then caused the grand jury to be empaneled was the relevant jury decision that was needed. And that happened here. The fabricated evidence is what led to the grand jury being empaneled. To go back to Judge Batchelder's question, ultimately at the end of the day we're asking about a violation of the Fourth Amendment. That is correct. And so we need an unreasonable search or an unreasonable seizure. Sure, and in Terry v. Ohio, the Court held that it's quite plain that Fourth Amendment government seizures of persons that doesn't eventuate in a trip to the station house, who doesn't equate to an arrest, includes or indicates a seizure. We might have a seizure that's not an arrest, and I take that point. And the cases you've cited, like Miller and others, talk about if you have to post bond, if you have a pretrial kind of release program where you have to do check-ins and things. What is your evidence of any type of seizure here? I understand it might not need to be an arrest and an incarceration, but what is the evidence of seizure here?  One, the plaintiffs had to submit to the authority of the officers in this case. They were forced to meet with the defendant officer, who then seized their personal property. So I think that would be the initial seizure. And they were subpoenaed or they were called, what do you mean by forced? Can you be a little more specific? Sure. The defendant officer contacted the university and compelled the defendants to then meet with him. And during that meeting is when he seized their personal property, their cell phones. And additionally, we can get into the other issues of the deprivation of liberty, especially when it deals with the molester's prosecution claim. But I would like to make one more point before we get there, if that's okay. I think the other issue here, when it comes to the fabrication of evidence claim, is that even if the court finds that a deprivation of liberty is a necessary requirement of that claim, dismissing that claim at this stage is premature. All of the cases that have dealt with this issue are at the summary judgment stage or after. Here, we're still at the motion to dismiss stage. And though we have pled significant facts and law supporting those facts in our complaint, it's a 175-paragraph complaint, I believe. So I believe we have met that burden of stating a cognizable claim and stating sufficient facts to support those. We should be given the opportunity to conduct further discovery in support of those issues. So turning to the deprivation of liberty claim, whether it deals with the fabrication claim or the molester's prosecution claim, we also should survive the motion to dismiss on those claims. We have adequately pled that the plaintiffs have suffered a deprivation of liberty. One, the plaintiffs here were held into court for an arraignment where the court imposed restrictions on them. They were forbidden from having any contact with the party goers who had disparaged them and physically assaulted them. They were also restricted from going back to that property. They were compelled to testify at the grand jury where they were questioned by the prosecutor and compelled to defend themselves. They were facing serious felony criminal charges, up to 20 years in prison for most, 25 years for Mr. Tisdale because of the fabricated firearm charge. They were subjected to a student conduct investigation and hearings where, again, they were forced to testify and defend themselves. It should be noted that after that intense student conduct investigation and hearing process that they were absolved of any misconduct. The defendant officers knew that. They were aware of the fact that months prior to bringing the fabricated charges in this case, that the university, through their intense investigation, had absolved the plaintiffs of any wrongdoing. They were suspended from the football team for months. During that time, they were forbidden from traveling with the football team to any of their out-of-state games. They had their personal property seized. Their reputation and earning potential was tarnished. They lost endorsements. They were subjected to intense, extreme emotional and mental distress. I know it's in our complaints that many of the plaintiffs themselves, because of the stress of months of these fabricated charges that had on them, they lost up to 30 pounds because of the stress and not being able to condition with the team. The fact that they were never arrested or incarcerated on the fabricated charges does not mean they did not suffer a liberty deprivation. In fact, cases decided by this court hold that harm, even without incarceration, sufficiently constitutes a seizure for the liberty deprivation. Specifically in Miller v. Maddox in 2017, this court held that participation in a pretrial release program constituted a deprivation of liberty. The Miller court recognized that the requirement to attend court hearings could constitute a seizure, citing to Johnson v. the city of Cincinnati. I think what we must address here is the fact that cases like Miller, cases like Noonan, cases like Johnson v. the city of Cincinnati, what they hold as a whole is that there are conditions that are so onerous. There is harm that is so great that it constitutes a deprivation of liberty, even if you're not actually placed in handcuffs and put in a jail cell. To distinguish Noonan, I would like to note that there are a lot of differences. One, Noonan was decided at the summary judgment stage. We've not yet been given that opportunity. Two, there was no preliminary examination in Noonan. Here, there was a grand jury panel at which the plaintiffs testified. There, the plaintiff didn't attend arraignment. Here, our plaintiffs were hauled into court for arraignment. There were no restrictions. Here, we have restrictions. In sum, the plaintiffs have suffered a deprivation of liberty beyond the harm suffered in Noonan, when considering the totality of the harm endured. Even if this court finds that a deprivation of liberty is necessary for fabrication, we have established that burden, both for the fabrication claim and the malicious prosecution claim. Great. Thank you. You'll have your rebuttal. Thank you. Good morning, Your Honors. My name is Jason Runzelman. With me at council table is my colleague, Kerry Mattingly. We have the privilege today of representing Lexington-Fayette-Urban County Government, Detective Vin Love, Police Chief Weathers, and Sergeant Gordon. Your Honor, all of plaintiff's constitutional claims are alleged under the Fourth Amendment to the United States Constitution. As this court's precedents and the United States Supreme Court has made clear, Section 1983 is not a freestanding common law tort regime of constitutional harm. You have to identify a specific constitutional guarantee that has been violated. When a claim arises under the Fourth Amendment, that means you have to allege a deprivation of liberty consistent with the idea of an unreasonable seizure. Here, plaintiffs have not alleged and cannot allege that they were ever arrested, that they were ever detained, that they were ever required to post bond, that they were subject to any travel restrictions as a condition of their release, or that they participated in any pretrial services programs. Under this court's precedents, that very clearly precludes a finding that a seizure occurred under the Fourth Amendment, regardless of what else they might allege about the lack of probable cause or the impropriety of the investigation. And that goes to both of plaintiff's claims. Both of plaintiff's claims are founded on the idea that what resulted from either fabrication of evidence or from a prosecution without probable cause was an invalid and unreasonable seizure, which they cannot establish here. Do you find it anomalous at all that whether you can have a malicious prosecution claim turns on something like whether you had to post bond? So say there was all this evidence fabricated against me, and I'm told to come report and there are charges filed against me, but I'm a very upstanding citizen, so I'm going to be released on my own recognizance without having to pay anything. I have no malicious prosecution claim under your theory. But let's say I have a horrible reputation for absconding, and the judge is worried I'm going to go to the Cayman Islands or something. And now I have to post a whole bunch of bond. All of a sudden, the same conduct happened, the same fabrication, the same harms happened, but now I don't have a malicious prosecution claim. Your Honor, it may be anomalous, but it's a decision that's reflected in the Constitution. In Albright v. Oliver, the Supreme Court said there's no freestandings to process protection against unwarranted prosecutions. I believe it said that absent some specific constitutional violation, you're not entitled to judicial oversight of the decision to prosecute. In the Richardson case, this court said freedom from criminal prosecution per se is not an interest that is the court of constitutional protection. Because of the varied harms that result from prosecutions, they had previously been treated as due process violations. That's what the Gregory case talks about. But after Allbright v. Oliver, that's no longer viable. The question is, has some specific constitutional guarantee been violated? The Fourth Amendment protects you against a seizure. It doesn't protect you against being investigated by the police and the anguish that that may or may not cause. Does this distinction that I'm asking about, like, for example, having to post bond, is that a distinction relevant to a malicious prosecution claim under Kentucky state law? No, Your Honor. We did not move to dismiss against the investigating officer under Kentucky state law. And again, that's the distinction. The Sykes v. Anderson case goes into this, that Section 1983 malicious prosecution claim is not meant to be coterminous with a state common law malicious prosecution claim. And Allbright v. Oliver as well says, in general, sort of the propriety of prosecutions is something to be handled by the common law. It's only when a specific constitutional guarantee is violated that we look to Section 1983 for relief. So, no, that, you know, we would have moved to dismiss. We certainly looked, you know, for whatever arguments we might have. Now, certainly there's good arguments that there's no allegation that procurement initiation and continuation was done by the police chief or the public information officer. But, you know, they don't need to establish a Fourth Amendment violation for a common law claim, which is currently pending in state court. As to the question of whether they need to establish a seizure for a fabrication claim, Judge Batchelder, I think your question was right on the money there. They may not if they are alleging a 14th Amendment procedural due process fabrication claim. But that is a claim that would require them to show they were deprived of procedural due process through the introduction of unfair and fabricated evidence. And as a result, they suffered a deprivation of life, liberty, or property. That claim is recognized in the context of a fair trial. If you're denied a fair trial and the fabricated evidence adversely affected the decision of the jury, such that your conviction was premised on false evidence, then you might have a 14th Amendment due process claim. But there was no trial. There certainly was no conviction here. You know, they argue that, you know, the impaneling of the grand jury itself might be an unfair procedure. But, again, the grand jury here returned no true bill. There was no deprivation that resulted from that procedure. But in any event, the complaint is very clear that this is a Fourth Amendment due process claim. No case has ever – no case of this court has ever imposed liability based merely on the impaneling of a grand jury. That's a step in the decision to prosecute. That would be in the milieu of malicious prosecution. And, you know, just recently in the Tanner case, this court again emphasized that when you're talking about the Fourth Amendment, the gravamen of a fabrication claim is that you have caused an unreasonable or unlawful detention on the basis of false or fabricated evidence. They talk about the Price – I believe it's the Price case. Yes, the Price case. In that case, first of all, it was not a Fourth Amendment claim. Secondly, it was decided on entirely factual grounds. Summary judgment was affirmed because there wasn't enough evidence that they'd actually fabricated evidence, not that there was a liberty interest implicated or a Fourteenth Amendment procedural due process interest implicated. So any discussion about the elements of a Fourteenth Amendment fabrication claim would be dicta in that case in any event. And another key distinction, I don't actually believe they were incarcerated. The plaintiffs were incarcerated in Price, but they were indicted by the grand jury. So even to the extent that you were to look at, you know, the impaneling of the grand jury as somehow an unfair procedure, they then, you know, arguably suffered some deprivation as a result and I believe were detained in that case as a consequence. But in any event, certainly that theory has never been affirmed as a basis for imposing liability. So even if this court were to decide to reach out and say, yeah, you know, impaneling the grand jury, which again is a step in the prosecution chain, therefore best understood as a malicious prosecution claim, even if this court were to reach out and say, yeah, that's going to be a Fourteenth Amendment claim from now on, it certainly is not clearly established as of the time of this conduct. And, you know, qualified immunity would be appropriate in that instance as a grounds to affirm the district court's decision. To this, you know, going on to the facts that, you know, I think counsel seems to acknowledge that at least the malicious prosecution claim requires some sort of seizure, but that, you know, it can be shown short of detention. That may be true, but Judge Blomkamp, as he pointed out, something more than just arrest has always been required. They talk about Miller v. Maddox, but Miller v. Maddox expressly approves, Judge Batchelter, your opinion in Noonan, as an instance where there was not, as a matter of law, a seizure. Now, Noonan faced multiple felony charges. His car was impounded for five months. He took a polygraph examination. He alleged he was compelled to attend, and I believe the decision points out it was stipulated he was compelled to attend. Court hearings, and yet this court said not enough. Miller says that's right, but this case has what Noonan didn't. Namely, the plaintiff was detained prior, following the arrest. They were enrolled in a pretrial services program. They had to pay money to get into that program as an alternative to having to post, I think, like a $3,000 bond. And the court also said there was a significant material issue of fact, critical to its analysis, of whether the plaintiff was detained beyond the point that she had already been accepted in the pretrial services program, which would render that detention independently unlawful. So the court literally says this case presents circumstances that were absent in Noonan. None of those circumstances is present here. She doesn't allege them. Now, there's a number of facts she cites in support of this idea of a seizure here that, one, don't satisfy the test, and two, aren't in the record. This idea that they were compelled to meet with Officer Vinlove regarding the search warrant. No facts about forced attendance are alleged anywhere in the complaint. They weren't briefed. They weren't alleged in the district court. In any case, they're not making a search claim, right? They don't have a Fourth Amendment unlawful search claim in this case. It would probably be untimely because they allege the search warrant was executed in March and the case wasn't brought until September of the following year. She said they were prohibited from going to the property where this party was. That's not alleged in the complaint. I don't know what the basis of that claim is. And, again, we don't know who prohibited them from doing that. She said there were no court-imposed restrictions since they weren't under any type of pretrial services. She said they were compelled to testify to the grand jury, which is a bit curious in the context of whether they could assert a Fifth Amendment right. But, again, that's not alleged in the complaint. The only allegation about the grand jury is Vinlove's testimony, which they say was fabricated. But, also, a criminal summons to attend, an order to attend a criminal proceeding in Noonan and Rathvee Putnam and Koomen. Koomen, the defendant, was actually criminally tried, and they said there was no seizure. This court said not enough. And, again, that's not in the complaint anyway. The student conduct investigation, that's something that was done by the university, not by LFUCG or the defendants. In any event, it wasn't a seizure. Even if some harm flowed from being suspended from the football team, again, when you're alleging a Fourth Amendment claim, it's not, did something bad happen to you? The question is, were you seized? That is the specific constitutional guarantee that the claim has to be rooted in, so it's not enough. Counselor, before your time expires, can I ask that you address a different question?  The district court judge here did take supplemental jurisdiction and decided a whole series of state law claims, including defamation issues, some of the claims against various defendants, right? But then didn't exercise supplemental jurisdiction over the malicious prosecution claim against the detective, right? I think I got that accurate. And I'm wondering if you can talk to whether once the federal claims, the Fourth Amendment claims, were not going to proceed, whether it was proper for the district court to continue to exercise jurisdiction over all of those state law claims, particularly given that there were state law claims where they weren't going to exercise jurisdiction. Yes. Well, first of all, I would say, I would point out that that is not raised in their briefs. They have not challenged supplemental jurisdiction. In the Carlsbad technology case, the United States Supreme Court specifically said supplemental jurisdiction is not a jurisdictional issue that can be raised at any time because it's fundamentally discretionary. And so, therefore, it's not something that could be raised to esponte, that they were attached to the federal claim and there was supplemental jurisdiction over those claims when the district court decided them. As to whether the district court can exercise supplemental jurisdiction for a time and then relinquish it, there's no authority from this court or the Supreme Court that I'm aware of that says it's always an all or nothing thing. And, in fact, there are cases that, you know, are pretty express. The United Mine Workers v. Gibbs, for example, 383 U.S. 715, that the decision whether to decline supplemental jurisdiction can be made at any phase of the litigation and the district court can continue to revisit that issue even after trial. In Kubala v. Smith, Judge Boggs wrote for this court that, you know, that could be decided after a trial. So the district court isn't required to make that decision immediately upon a resolution of the federal claims and then can't do anything further. That is a decision the district court evaluates over the course of the litigation when it becomes clearer that the state claims will predominate or will be the focus of the case. So no authority prevents the district court from exercising supplemental jurisdiction and then relinquishing it. But in any event, you know, as the Supreme Court made clear, you know, this court in the Orton v. Johnny's Lunch franchise case, supplemental jurisdiction is unlike other jurisdictional issues because it is discretionary. It is waivable. And in this case, it has been waived. Your Honor, if there are no further questions, I would urge the court to affirm. Thank you very much. Your Honors, I would submit that this case has precisely the factors that were missing in Noonan that Miller, Johnson, Jackson have indicated could constitute a deprivation of liberty. And I don't think that we can dismiss the facts of this case when it comes to the deprivation of liberty. Unlike Noonan, the plaintiffs were held into arraignment where the district court at arraignment gave them restrictions. That is in the court record. And even if it's not alleged in our complaint, I think that is another indication of the fact that it was premature for the district court to dismiss this case at that stage. We argued that the plaintiff's liberty was deprived in the complaint. And we should be giving... Well, it's not enough to just make a conclusory statement for the district court to say, I'm going to take the facts true as the plaintiff put them. That's a legal conclusion. So what are the facts in your complaint that support what you're arguing now? We specifically stated in the complaint, we talked about the fact that they were forced to testify at the grand jury. That is specifically in the complaint. What's your best case to support the idea that having to testify before a grand jury is a deprivation of liberty? Well, Miller, citing Johnson, talks about that. Even Noonan talks about how there are times when if you are called into court to testify, that could constitute a deprivation of liberty. And Noonan, the plaintiff was not forced to do so. The prosecutor dismissed the charges, no le prosecute, prior to it ever getting to that stage. But in Miller, and in Johnson, and in Noonan, it said that it was possible that being called to testify could be sufficient. And that happened here. They were given restrictions. They did testify. And even the criminal summons itself stated that if they did not attend court, they would be subject to arrest. I also wanted to quickly address the qualified immunity issue that opposing counsel raised. The relevant question here is whether the defendant was on notice that his actions violated laws of the United States. There is no debate that the defendant was on notice he cannot fabricate evidence to bring charges. There is no debate that the defendant was on notice that he cannot bring charges with no probable cause. Those premises have been clearly established in the law for years. Spurlock, Gregory, Jackson, Clark v. Abdallah all talk about that. In closing, I did want to address the question that Judge Blumkett brought. Should the defendant's argument stand? Officers could avoid civil liability and be empowered to fabricate evidence and initiate charges without probable cause against innocent citizens simply by issuing criminal summons versus effectuating a physical arrest. Counsel, can these claims be brought under 14th Amendment procedural due process theory? I mean, I know that Albright forecloses a substantive due process theory. I think it could. I will say in Albright, there is discussion as to whether or not the continuing seizure doctrine has been accepted in the circuit. In the Phelps case, it says that it has. I think that we properly brought this under the Fourth Amendment. I think you could also bring such a claim under the Fourteenth Amendment. Does the fact that there is an existing malicious prosecution tort claim in Kentucky that doesn't require the seizure foreclose a Fourteenth Amendment procedural due process claim? I don't believe that it does. Okay. Thank you. Thank you very much for your arguments today. The case will be submitted.